HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HARJIT GILL,<br><br>        Plaintiff,<br><br>    v.<br><br>AMERICAN MORTGAGE EDUCATORS, INC.; LISA ROSENBERGER; PERFECTO BOBADILLA; ROBERT ROSENBERGER,<br><br>        Defendants. | Case No. C07-5229RBL |
| AMERICAN MORTGAGE EDUCATORS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>HARJITT SINGH GILL,<br>        Defendant. | Case No. 07-5244RBL |

## **INTRODUCTION**

Harjit Gill moves for a preliminary injunction against American Mortgage Educators, Inc. (AME) to cease and desist from advertising, distributing, selling, and otherwise using his intellectual property, and to return his personal property. AME cross-moves for a preliminary injunction against Mr. Gill to return all information copied from the domain name MortgageFreeUSA.com (the "domain"), and to cease using the domain.

ORDER
Page - 1

# FACTS

The two consolidated cases arise out of an acrimonious divorce. No. C07-5244 was originally filed by AME against Harjit Gill, in Thurston County Superior Court. Mr. Gill had the case removed to this Court. AME is a Washington corporation co-owned by Lisa Rosenberger, Mr. Gill's ex-wife and AME president, and Robert Rosenberger, Ms. Rosenberger's father and majority shareholder. Mr. Gill filed Cause No. C07-5229 against AME, Inc.

Mr. Gill, a self proclaimed "world authority on accelerated [home] mortgage reduction strategies", is an Australian citizen currently residing in Yelm, Washington. In 1995 while living in Australia, Mr. Gill published *How to Own Your Home Years Sooner* and created a software program that allows paid subscribers to track online his/her individual mortgage and equity. Both the book and software are part of an accelerated equity system designed by Mr. Gill to teach homeowners how to save money in interest payments by using the banking system to their advantage. This system was successful enough that upon moving to the United States, Mr. Gill decided to redevelop the book and software to make them applicable to the North American home mortgage market. Gill Compl. at 1, 3-4 [No. C07-5299, Dkt. # 1].

In 2002, while living in the U.S., Mr. Gill registered and began using the domain name www.MortgageFreeUSA.com. Ownership of the domain is currently in controversy. A year later, in 2003, Mr. Gill redeveloped and branded the software as "Speed Equity" software (the "software") and published it live on MortgageFreeUSA.com The software was registered with the Copyright office on June 1, 2007. Ex. 2 to Gill Decl. [ No. C07-5229, Dkt. # 12]. Jeevan Anandaskaran assisted Mr. Gill by writing the software's code in exchange for a ten percent royalty interest in any software subscriptions. Anadeaskaran Decl. at 1 [No. C07-5244, Dkt. # 14]. That same year Mr. Gill published the U.S. version of *How to Own Your Home Years Sooner* (the "Book"), which was also sold on the website. He formed Mortgage Eliminators, LLC  ("LLC"), a Washington limited liability company in 2003. The LLC was supported by Mr. Gill's speaking engagements, Speed Equity seminars and workshops, online software subscriptions, and book sales. Mr. Gill applied to trademark "Speed Equity" in International Class 036 in September 2005. The trademark was registered in the name of the LLC on October 3, 2006. Ex. 4 to Gill Decl. [No. C07-5229, Dkt. # 12]. Mr. Gill asserts that the registration under the LLC is incorrect and that it was supposed to be

under his name. Ex.1 to Axel Decl. at 63 [No. C07-5229, Dkt #18].

In 2002, while trying to get the LLC off the ground, Mr. Gill met Ms. Rosenberger at a spiritual retreat and they began dating shortly thereafter. Mr. Gill and Ms. Rosenberger cohabitated, became pregnant with their daughter, and subsequently married in 2005.

While dating Mr. Gill, Ms. Rosenberger began working in an administrative capacity at the LLC. She and members of her family, including Mr. Rosenberger, became minority shareholders of the LLC; Mr. Gill, however, remained the majority shareholder. Later, Mr. Gill met Perfecto Bobadilla—who would become AME's Chief Operating Officer, Bobidilla encouraged the formation of a corporation to better market and commercialize Mr. Gill's intellectual property, and to provide liability protection the LLC supposedly lacked. In May of 2006 AME was formed; the LLC dissolved in June of 2006. Gill Decl. at 3 [No. C07-5229, Dkt # 12]. In forming AME the intention of the participants was that Mr. Gill would transfer his ownership in the intellectual property while Mr. Rosenberger and others made financial investments in the corporation. Presumably, the investors and Mr. Gill would share ownership of the corporation. AME claims that Mr. Gill transferred his intellectual property interest to the new corporation (AME). It relies on undocumented conversations between Mr. Gill and Mr. Bobadilla, Bobadilla Decl. at 2 [No. C07-5229, Dkt # 15] and Mr. Gill's failure to expressly state that he was not surrendering his intellectual property to AME. L. Rosenberger Decl. at 2 [No. C0-5229, Dkt. # 16]. Mr. Gill, however, states that when Mr. Rosenberger became majority shareholder Mr. Gill refused to transfer his intellectual property rights, which included the book and all of its physical copies and the Software. Gill Decl. at 3 [No. C0-5229, Dkt # 12]. No evidence of an actual transfer of ownership to the corporation has been presented to the Court. Bobadilla Decl. at 2 [No. C07-5229, Dkt # 15]; Gill Decl. at 3 [No. C0-5229, Dkt # 12].

In 2007 Ms. Rosenberger filed for divorce. Just prior to filing of dissolution proceedings, it is alleged that Mr. Gill and the others decided that Mr. Gill would not be a shareholder in AME but that he would instead be an independent consumer advocate who could promote the corporate website with greater credibility. AME claims Mr. Gill is not an AME shareholder but rather a mere independent contractor. In the divorce proceeding the Thurston County Family & Juvenile Court

concluded:

    1.     There is a prima facie showing that [t]he intellectual property of the books and on-line software is the separate property of Harjit Gill.

    2.     The intellectual property should be turned over to [him].

    3.     The court does not have the jurisdiction to order the corporation to take any action or turn over any property.

Ex. B to Gill Compl. [No. C07-5229, Dkt. # 1]. On May 4, 2007, after the court reached the above conclusions, Mr. Gill sent a cease and desist order to AME asking it to stop selling his intellectual property. Ex. C to *Id*. AME refused to comply, and compounded the situation by sending emails to its customers detailing the intimacies of the marriage and divorce proceedings, Ex. 10-12 of Gill Decl. [No. C07-5229, Dkt. # 12], Mr. Gill shut down the domain, which was still registered in his name. AME, however, continues to sell both the book and online subscriptions to the Software on its new domain, www.americanmortgageeducators.com. Ex. 8-9 of Gill Decl. [No. C07-5229, Dkt. # 12]. Mr. Gill sells the same Speed Equity® products on his new website, www.SpeedEquity.com.

    Gill asserts that Mr. Anadeaskaran transferred to him all ownership rights to the software. This assertion is supported by Mr. Anadeaskaran. Anadeaskaran Decl. at 1, 2 [No. C07-5244, Dkt. # 14]. AME, however, declares that it not only hired and paid Mr. Anadeaskaran to write the software's code, but that he later assigned all of his rights to AME. Bobadilla Decl. at 2 [No. C07-5229, Dkt # 15]. Alternatively, they claim an implied license to market the use of the Software.

    As for the rights to the book, the parties agree that Mr. Gill is the copyright owner of the book. The contested issue, is whether AME owns the physical copies of the book printed during the life of the LLC. AME claims it owns the physical copies under the "First Sale" doctrine. Mr. Gill counter's this contention by stating that the dissolution of the LLC made all printed copies of the book his personal property. He also claims that the LLC only reimbursed him for the printing of the first 10,000 copies of the book. Those copies have been sold by the LLC and/or AME leaving approximately 15,000-20,000 copies that Gill paid for.

Finally, with regard to the domain name ownership, both parties agree that Mr. Gill registered the domain and that it remained registered in his name until he shut it down in May 2007. Additionally, the parties agree that the LLC, and later AME, paid for the domain's registration fees. Mr. Gill asserts that he is the owner of the domain and that AME's failure to promptly and adequately respond to his cease and desist letter enabled him to shut down the site.  AME, however, claims that in addition to its paying the domain fees, it has been populating the site so as to increase internet traffic to the site, and that its extensive use of the domain name make it the rightful owner of the domain.  Pl.'s Mot. Prelim. Injun. [No. C07-5244, Dkt # 10].

## DISCUSSION

The liberal policy for issuing permanent injunctions for intellectual property infringement upon adjudication does not apply to preliminary injunctions. *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032 (9th Cir. 1994), *cert. denied*, 115 U.S. 85 (1994).  The purpose of preliminary injunctions is to preserve the status quo and avoid irreparable injury before adjudication. See *Textile Unltd., Inc. v. A. BMH and Co., Inc.*, 240 F.3d 781, 786, (9th Cir. 2001); *King v. Saddleback Junior Coll. Dist.*, 425 F.2d 426 (9th Cir. 1970), *cert. denied*, 404 U.S. 979, 404 U.S. 1042 (1970).

The Ninth Circuit weights fours factors in determining whether to grant preliminary injunctions.  A party must show "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff[] if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff[]; and (4) advancement of the public interest." *Textile Unltd.*, 240 F.3d at 786, (9th Cir. 2001) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)).

To meet the first prong the plaintiff is required to show copyright infringement by the defendant.  Copyright infringement is proved  by (a) copyright ownership, and (b) defendant copied an expression protected by those copyrights. *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995). Certificates of registration "raise a presumption of the validity of [the plaintiff]'s copyrights" in the disputed expression. *Id.  See also*, 17 U.S.C. § 410(c) ("In any judicial proceeding the certificate of registration made before or within five years of the first publication of

the work shall constitute prima facie evidence of validity of the copyright and of the facts stated in the certificate."). The defendant, however, can rebut this presumption by showing that the plaintiff did not comply with required formalities. Paul Goldstein, *Goldstein on Copyright* § 13.1.2 (3d ed. 2005). In copyright cases the plaintiff creates a presumption of irreparable injury upon showing a reasonable likelihood of success on merits. *Triad*, 64 F.3d 1335 (citing *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1174 (9th Cir. 1989); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983), cert. dismissed, 464 U.S. 1033 (1984)). Thus, the second prong is presumptively met when the plaintiff meets the first prong. This Court has discretion to grant or deny a preliminary injunction. *See Deckert v. Indep. Shares Corp.*, 311 U.S. 282 (1940); *Textile Unltd.*, 240 F.3d at 786.

**A.   Software Ownership.**

Mr. Gill's production of the certificate of registration raises the presumption that he is the copyright holder. *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995) Additionally, Mr. Anandaskaran's deposition testimony and letter (albeit after the divorce) assigning all rights to Mr. Gill create the rebuttable presumption that Mr. Gill is the copyright owner. AME's inability to provide clear proof that it paid Mr. Anandaskaran for the copyright, or that he assigned the copyrights to AME and not Mr. Gill, does not adequately rebut Mr. Gill's ownership claim.

**B.   Book Ownership**

When a copyright owner consents to the transfer of copies of the copyrighted work the owner's distribution rights are limited by the transferee's right to dispose of the copy. 17 U.S.C. § 109(a). This limitation is known as the first sale doctrine. To invoke the first sale doctrine, a defendant must be able to show: (1) the copy was lawfully manufactured with authorization of the copyright owner; (2) the particular copy transferred under the copyright owner's authority; (3) the defendant is the lawful owner of the particular copy; and (4) the defendant did not dispose (e.g., duplicate) of the copy. 2 Melville B. Nimmer, *Nimmer on Copyright* § 8:12[B][1] (2007).

Whether the physical copies of the Book currently in AME's possession are owned by AME or Mr. Gill's turns on whether AME meets the above four requirements. AME's invocation of the first sale doctrine hinges on whether AME actually paid for either of the printings. AME claims it

paid both of the printings. Mr. Gill, however, asserts he paid for both printings with his personal American Express card and that AME reimbursed him for the first printing only. Ex. 1 of Axel Decl. at 73-74 [No. 7-5229, Dkt. # 18 ]. Neither party, however, provides substantial proof to confirm their statements. Mr. Gill attaches a copy of the receipt with a charge to an American Express card, with a hand written notation stating the card is his personal credit card. No additional proof is provided to show that the credit card account number corresponds to his personal card. Ex. B to Gill's Supp. Decl. in Support of Pl.'s Mot. Prelim. Injun. [No. C07-5229, Dkt. #23]. AME's evidence is even less substantial. Mr. Rosenberger claims that one of the reasons he paid $25,000 into the LLC was to pay for the book's printing, and that he would not have made that investment nor his subsequent $50,000 investment into the AME had he not reasonably believed that AME was the sole owner of the software and physical copies of the book. R. Rosenberger Decl. at 1, 2, 3 [No. C07-5229, Dkt. # 17].

The evidence before the Court supports the conclusion that the author of the book, Harjit Gill, paid to have the book printed and that the LLC reimbursed him for the first printing only (10,000 copies). The parties agree that the LLC and AME have sold at least that many books. It now appears to the Court that the books printed as part of the second printing were paid for by Harjit Gill and that he is likely to succeed on his claim that the books belong to him..

**C.     Domain Name Ownership**

AME has moved for a preliminary injunction in an attempt to stop Mr. Gill from using the domain name MortgageFreeUSA.com to redirect customers to SpeedEquity.com. AME alleges that Gill is engaged in cybersquatting in violation of its trade mark in SpeedEquity and of 15 U.S.C. § 1125(d). As noted above the Ninth Circuit weights fours factors in determining whether to grant preliminary injunctions. A party must show "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiff[] if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiff[]; and (4) advancement of the public interest." *Textile Unltd.*, 240 F.3d at 786, (9th Cir. 2001) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980)).

AME and Mr. Gill both agree that the domain name, MortgageFreeUSA.com, was originally registered in Mr. Gill's name. Pl.'s Mot. Prelim. Inj. [No. C07-5244, Dkt # 10]. Domain names are considered to be owned by the person who registered the name with the registrar. To transfer a domain name to another party, the transfer must be recorded with the registrar. 5 Anne Gilison Lalonde, *Gilson on Trademarks* § 30.08 (2007). It is uncontested that Mr. Gill registered the name, and no showing has been made that Mr. Gill transferred the domain name to AME. Therefor, AME cannot pass the threshold test of demonstrating a strong likelihood of success on the merits as to ownership of the Domain name.

**D.     Conclusion**

AME's motion for injunctive relief (No. C07-5244, Dkt # 10) is DENIED. Mr. Gill's motion for injunctive relief (No. C07-5229, Dkt # 11 ) is GRANTED. The Court grants Mr. Gill's motion with respect to his request to enjoin AME from advertising, distributing and selling *How to own your home years sooner*; AME shall remove all references to Mr. Gill from AME's current website[s] and Internet home pages; AME shall return Mr. Gill's personal property, including files, customers lists, printed copies of the software and physical stock of the book; AME shall deliver or make available to Mr. Gill an accounting of all funds received from the sale, lease, distribution, or access to either the software or the book; and shall cease all contact with Mr. Gill's existing business relationships.

IT IS SO ORDERED this 19th day of September, 2007.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE